**UNITED STATES of America**

v.

**F. Lee BAILEY.**

**No. 73–71.**

United States District Court,
M. D. Florida,
Orlando Division.

Aug. 8, 1975.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Claude Tison, William M. James, Jr., Tampa, Fla., for plaintiff.

F. Lee Bailey, pro se, Henry Gonzalez, Tampa, Fla., for defendant.

## MEMORANDUM OF DECISION

REED, District Judge.

### I. Introduction:

On 30 July 1975, the Court heard two motions filed by the defendant Bailey. One was a Motion to Dismiss for Failure of the Government to Provide a Speedy Trial. The other was an Alternative Motion for a Speedy Trial. The former was filed on 19 June 1975; the latter on 1 July 1975. Evidence was taken at the hearing.

### II. Background:

On 18 May 1973, the indictment was returned. The defendant Bailey was one of thirteen defendants joined therein. He was charged in each of the indictment's twenty-eight counts. Twenty-seven counts charged defendant Bailey with mail fraud. The last count of the indictment charged him with conspiracy to commit mail fraud.

At an early date, the very nature of the indictment with its multiple but similar claims and numerous defendants inspired a judicial forecast of procedural and substantive problems. On 23 May 1973, the defendant Bailey moved for a speedy trial and, on 4 June 1973, a severance. In passing on these motions, the then presiding judge of this Court prophetically observed:

> "Now, the Government proceeds it seems to me at its own peril in this respect because of the duration of the trial, if the case goes eight to fourteen weeks, and it becomes necessary to sever as to certain defendants . . . It might be that a trial of that duration as to a defendant even if severed from the trial might preclude a retrial . . . . So I do not at this time grant the severance, however, I make that ruling with the caveat as I have just stated."

### III. A Chronology of Events and Pertinent Facts Appearing from the Record or by Reasonable Inference:

The trial of all defendants got under way on 17 September 1973. As to the defendant Bailey the trial terminated in his severance seven months later when, on 25 April 1974, it became apparent that essential testimony from a codefendant would not be available to the defendant Bailey in the context of a joint trial. After eight and one-half months of trial and the receipt in evidence of some one thousand exhibits and the testimony of approximately one hundred sixty witnesses, the epic production ended for the other defendants on 30 May 1974 in a mistrial because the jury was unable to reach a verdict.

Immediately after the mistrial, the defendant Bailey took steps to determine the Government's position with respect to retrial. On 4 June 1974, the defendant Bailey indicated to officials in the Department of Justice that he desired to have a speedy retrial, if a retrial was to be had at all, and was told by such officials that the Government's position with respect to retrial would be formulated within thirty days. After the lapse of thirty-five days with no response forthcoming from the Government, the defendant Bailey prepared two motions—one a motion to dismiss on the ground that a retrial would violate his right to immunity from double jeopardy; the other, an alternative motion for speedy trial. These motions were filed on 16 July 1974 and heard by the Court on 23 August 1974. The Government took no position with respect to the latter motion. Both motions were denied by an order entered 30 August 1974.

The Court's order of 30 August 1974 was appealed to the United States Court of Appeals for the Fifth Circuit on 9 September 1974. The mandate from the Fifth Circuit came down on 5 June 1975. The accompanying opinion indicated that the appellate court had concluded that it was without jurisdiction over the appeal because of the interlocutory nature of the order appealed from—a position urged by the Government. Thereafter, a petition for certiorari was filed in the Supreme Court on 9 June 1975. The petition is still

pending. During the appellate process, the defendant sought no stay order to deter prosecution pending resolution of the appeal.

At no time since the severance on 25 April 1974 has the case against the defendant Bailey been set for a new trial. The trial of the case against the other defendants has been set for 4 August 1975. At the hearing before this Court on 30 July 1975 the Government advised the Court that it expects the trial of the other defendants to last approximately four and one-half months and that it desires the Bailey trial to commence thirty to sixty days thereafter. Somewhat similar advice was given by the Government to the Honorable Terrell Hodges on 19 June 1975 at a status conference following which the severed case as to the defendant Bailey was transferred to the undersigned for further proceedings. From a practical standpoint, this case cannot be tried, because of the pendency of the trial of the other defendants, until mid-January 1976.

By way of summary, the following appears to be an accurate resume of the relevant time periods:

| Period | Event | Lapsed Time |
|---|---|---|
| 9/17/73–5/30/74 | Trial from start to mistrial | 8⅓ months |
| 4/25/74–9/9/74 | From severance to Notice of Appeal | 4½ months |
| 9/9/74–6/5/75 | From Notice of Appeal to Mandate | 9 months |
| 4/25/74–7/30/75 | From severance to hearing on Motion to Dismiss | 15 months |
| 4/25/74–1/15/76 | From severance to anticipated date for retrial | 20⅔ months |
| 5/18/73–1/15/76 | From indictment to anticipated date for retrial | 32 months |

The prosecuting attorneys have made no affirmative effort to secure or delay the setting of the case for retrial of the defendant Bailey or to establish any sequence for the new trials. The Government did, however, adopt the position that it favored a deferral of the retrial of the defendant Bailey until after the conclusion of the trial of the other defendants. The reason for this position was an assumption by the Government's attorneys that the quality of the witnesses' testimony would deteriorate with each succeeding trial and this assumed deficit, from a public-interest standpoint, would be more acceptable in the trial of a single defendant than in the joint trial of the other defendants. Neither the Government preference nor the reason therefor was communicated to this Court, until the hearing on the present motion on 30 July 1975.

The defendant Bailey, a practicing trial lawyer, has suffered serious professional, financial and emotional distress as a result of the delay. For example, personnel in the defendant's law firm has diminished and his professional income has decreased. He has lost clients and been unable to make firm commitments to court or client respecting his ability to meet trial dates. Defendant Bailey is paying the cost of his own defense. To the extent, therefore, that the delay has impaired his financial resources, his ability to present his defense may likewise have been affected.

III. Legal Analysis:

The Court's function in passing on a motion to dismiss grounded on a denial of a defendant's sixth amendment right to speedy trial is to attempt to balance the conduct of the prosecution against that of the defendant in arriving at a decision as to whether or not such right has in fact been denied. In so doing, the Court must consider the length of delay, the reasons for the de-

**530**

lay, whether the defendant has asserted his right to speedy trial, what, if any, prejudice has accrued to the defendant, and any other relevant factors. *Barker v. Wingo,* 407 U.S. 514, 1972, 92 S.Ct. 2182, 33 L.Ed.2d 101; *Moore v. Arizona,* 414 U.S. 25, 1973, 94 S.Ct. 188, 38 L.Ed. 2d 183; *Prince v. State of Alabama,* CA 5, 1975, 507 F.2d 693; *United States v. Shepherd,* CA5, 511 F.2d 119; *Turner v. Estelle,* CA5, 1975, 515 F.2d 853.

■ Usually the length of the delay is measured from the indictment to the time of trial. See *Prince v. State of Alabama, supra,* at page 701. In the present case, the time lapse from indictment to the anticipated date for the new trial is thirty-two months; however, where, as in this case, the defendant has had at least a partial trial, the attention of the Court should focus primarily on the delay between the time when the necessity for the retrial arose and the time anticipated for the retrial—a period of twenty and two-thirds months. The total time from the indictment to the new trial is relevant primarily to considerations of prejudice.

When the delay from the time of severence to the time anticipated for the retrial is considered and contrasted with the ninety-day standard for retrials set by the 50(b) plan of this Court, it would appear that such delay is substantial and requires this Court to evaluate the other factors bearing on an evaluation of the constitutional right asserted by the defendant.

There are several reasons which relate to the pertinent delays in this case. The lack of judicial manpower in this district is certainly one factor which has played a part. This district has six resident judges working on a full-time basis to provide for the needs of a district which includes approximately fifty-two percent of the state's population. The remainder of the state is served by nine federal judges.

The initial trial of this case occupied one trial judge for eight and one-half months. It was a manifest impossibility for a judge having undergone such a trial period to immediately embark upon a retrial. To do so would have been inconsistent with the responsibility of the trial judge with respect to other criminal and civil matters assigned to him.

■ The foregoing to the contrary notwithstanding, the lack of judicial manpower is considered a neutral reason for delay. That is to say, it does not weigh heavily against the Government but, on the other hand, it does not substantially justify delay because, in the final analysis, the obligation is on the Government to provide the defendant with a speedy trial.

Initially it appeared to this Court that the present delay was justified to preserve the basic objective of the severance—namely, to make available to defendant Bailey the testimony of a codefendant, Ben Bunting. From the record it does not appear, however, and the Government does not contend, that Bunting would not have testified for Bailey in a separate trial, even though such trial preceded that of Bunting.

■ The pendency of the appeal of the defendant Bailey from the order of this Court entered on 30 August 1974 denying his motion to set the case for a speedy trial or in the alternative to dismiss does not provide a satisfactory justification for the delay in this case—particularly where the prosecuting attorneys took the position in the appellate court that the appellate court lacked jurisdiction over the appeal and ultimately succeeded in securing the adoption of such position.

■ As another—and perhaps the most significant—reason, this Court must consider the failure of the Government to take a clear and affirmative position before the trial judge when the defendant Bailey, by his motion of 16 July 1974, reasserted his right to have the case set for a speedy retrial.

In the recent case of *Prince v. State of Alabama, supra,* the Fifth Circuit

Court of Appeals was dealing with the case of a man who, while serving a California state sentence of up to life in prison, demanded a speedy trial on charges that were then outstanding against him in the State of Alabama. The Fifth Circuit held that the State of Alabama had a duty to attempt to extradite Prince from California in order to provide him with a speedy trial in the State of Alabama—even though there was no evidence in the record to indicate the probable success of such an effort. The Court said that the failure of the State of Alabama to seek Prince's extradition " . . . in the face of Prince's assertion of his speedy trial right, and with the consequent delay in Prince's trial, constituted a deprivation of Prince's right to speedy trial."

If Alabama was constitutionally obligated to make such a positive effort to bring Prince to trial, it would certainly seem that the prosecution in the present case was at the very least under a duty to take a position with respect to the defendant's July 1974 demand for a speedy trial. Had it done so, it is reasonable to assume that a firm trial date would have been set consistent with the needs of the prosecution and the defendant's constitutional right to speedy trial. Instead the Government sat mute. This failure, by analogy to Prince, must weigh heavily against the Government. See also *Smith v. Hooey,* 1969, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.

With regard to the demand for speedy trial by the defendant, suffice it to say that at the very outset he demanded that he be provided with a speedy trial and consistently renewed his demands thereafter, both formally and informally. There is no evidence before the Court that these demands were not sincere.

■ With regard to prejudice, while it is clear that more than normal anxiety stemming from criminal charges must be shown, *U. S. v. Shepherd,* CA5, 1975, 511 F.2d 119, 123, prejudice to the actual defense on the merits is not essential. The Court may consider the effects of the pending criminal proceeding on the defendant's employment, his financial resources, public obloquy, and the anxiety experienced by him, his family, and friends. *Moore v. Arizona,* 1973, 414 U.S. 25, 27, 94 S.Ct. 188, 38 L.Ed.2d 183.

■ The evidence in the present case indicates that the defendant Bailey has been affected in all areas just mentioned. Even without evidence being presented, this Court can take judicial notice that the pendency of a criminal indictment against one engaged in the practice of law would have a devastating effect on such person's professional standing and his ability to earn a livelihood as an attorney.

■ Finally, in attempting to balance the conduct of the parties, the Court may take into consideration the nature of the case. In *Barker v. Wingo, supra,* the Supreme Court indicated that more delay would be acceptable in the trial of a complex case than in the trial of a simple one. Likewise it would appear to be reasonable that, when the resolution of a speedy trial issue will result either in a trial or a dismissal of the indictment, more delay might be acceptable with respect to an offense that involved personal violence or threats thereof than could reasonably be tolerated in connection with offenses that by allegation involve commercial fraud only.

■ Thus the complexity of the case might well excuse the failure of the Government to bring the defendant to trial within ninety days following the severance or the mistrial. It does not, however, excuse the Government's failure, when met with the defendant's demand for a speedy trial, to make a good faith effort to secure a trial date consistent with the defendant's rights and prosecutorial necessities.

V.  Conclusion:

From a consideration of the foregoing factors, this Court concludes that the de-

fendant's constitutional right to a speedy trial following the demand made by his motion filed on 16 July 1974 was not protected in a constitutionally acceptable fashion. Accordingly, defendant Bailey's motion to dismiss the indictment for a denial of speedy trial should be granted.