JOHN EDWARD JONES *v.* STATE OF MARYLAND

[No. 3, September Term, 1976.]

*Decided December 14, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ. and MATTHEW S. EVANS, Associate Judge of the Fifth Judicial Circuit, specially assigned.

*F. Lee Bailey,* with whom was *Joel D. Fedder* on the brief, for appellant.

*Albert Gallatin Warfield, III* and *John A. Austin, Assistant Attorneys General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., and SMITH, J., dissent and MURPHY, C. J., filed a dissenting opinion in which SMITH, J., concurs at page 18 *infra.*

The issue which we conclude to be dispositive of this criminal cause is whether the petitioner's right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution was denied. Because we determine that this right was violated, the conviction must be reversed and the indictment dismissed.

The petitioner, John Edward (Liddy) Jones, following his arrest on July 12, 1972, was charged in Baltimore County with violations of, and with conspiracy to violate, Maryland's narcotics laws. Approximately two and one half years later, in December of 1974, upon removal trial began in the Circuit Court for Calvert County before Judge Perry G. Bowen, Jr., and a jury. At that trial Jones was found guilty on four counts of the indictment and was sentenced to a 20-year term of imprisonment to commence following the expiration of a federal term he is presently serving. The petitioner noted a timely appeal to the Court of Special Appeals, where a three-judge panel upheld his conviction, with Judge Davidson dissenting. *Jones v. State*, 29 Md. App. 182, 348 A. 2d 55 (1975). We granted certiorari to review that court's decision.[1]

In the resolution of the speedy trial issue in this case we, of course, must carefully scrutinize all occurrences between Jones' arrest and trial. For the sake of clarity and brevity, however, we will present only a skeletal outline of facts at this point and recount in more detail, in our discussion of the reasons for the delay and the defendant's assertion of the right, those events which the parties allege either directly or collaterally contributed to the two and one half year period.

[1]. Our grant of certiorari was limited to two issues: (1) whether the petitioner had been denied his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and (2) whether Article XV, section 5 of the Constitution of Maryland, which establishes the jury as judge of the law as well as of fact in criminal causes, is violative of federal due process requirements. In view of our determination with regard to the speedy trial question, it is unnecessary to discuss the second issue.

By way of a one sentence overview, suffice it to say that Jones' trial on the narcotics charges could well have taken place as scheduled on December 15, 1972, June 25, 1973, February 26, 1974, or June 26, 1974, but for various reasons it did not commence until December 11, 1974.

On the day following his July 12th arrest, Jones escaped from the Baltimore County jail; however, within several days he surrendered to local authorities and was indicted for the several narcotics offenses as well as for the escape. The State elected, over Jones' objections, to proceed on the escape indictment first, and trial was set for November 29, 1972, with the narcotics case to be tried no later than December 15th of that year. However, neither trial took place as contemplated because two days prior to the scheduled trial on the escape charge, Jones and the State entered into a written agreement which provided that the escape case would be tried on January 8, 1973 (or as soon thereafter as the docket would permit), and would be completed prior to commencement of the trial on the narcotics charges. Along with a number of preliminary motions, Jones filed his first demand for a speedy trial of the narcotics cause on January 2, 1973. On January 11, he entered a guilty plea to the escape charge and was sentenced to a prison term of 13 months. On March 2, 1973, the Deputy State's Attorney for Baltimore County wrote to the petitioner's attorneys, explaining that while the State had taken no action to press the narcotics case to a conclusion during the previous two months because it was not sure Jones would attend the trial (claiming his whereabouts were then unknown to it), the State now desired to proceed as quickly as possible. And in mid-March, the parties agreed to a March 30 hearing on several pending preliminary motions, which took place as scheduled. A little more than one month later, on May 3, the petitioner was indicted on charges of federal narcotics violations. Although the State should have had scheduling priority in light of the fact that a June 25 trial date was set at a hearing in late May (when no trial date in federal court apparently had been determined), Jones' trial in the federal district court

nevertheless began on June 18 and lasted through July 21, thus forcing a further postponement of his state trial.[2]

Very little activity appears to have transpired over the course of the next several months in connection with the disposition of this case. In September the state's attorney's office contacted Jones' lawyers by letter with regard to a motion for discovery and inspection, and on November 14, the petitioner filed his second motion for a speedy trial. Subsequently, on the day after Christmas, Assistant State's Attorney Ruppersberger and Jones' attorney orally agreed to a February 26, 1974, trial date and following several exchanges of letters in January, this date became firm. On the 8th of February, however, the case was removed from the scheduled assignment by Circuit Administrative Judge Proctor, who indicated that no judges were available to conduct the trial and that it would have to be rescheduled for some time during the April term of court. Jones' arraignment was similarly postponed on a number of occasions in the spring of that year, during which time numerous motions were filed, including Jones' third speedy trial assertion and a request that his trial be severed from that of his three co-defendants. Following the grant of the petitioner's severance motion, the State elected to proceed against Jones' co-defendants first, but finally at a June 13 hearing, the case against Jones was set to go forward on the 26th of that month.

Perhaps he would have been tried in June, but at a hearing on the scheduled trial date, Jones agreed to waive his right to a speedy trial until November 18 so that attorney F. Lee Bailey, who was then unavailable due to a trial conflict, could represent him. An additional post-postment, requested by Bailey, caused a further delay until early December. The trial finally began in the Circuit Court for Baltimore County on the 4th; however, the next day Judge Proctor declared a mistrial pursuant to Jones' request and removed the case to Calvert County where trial began on December 11. At trial, Jones again raised the

2. Jones was convicted in federal court and sentenced to a 30-year term of imprisonment which he is now serving.

speedy trial issue, this time by a motion to dismiss. The court denied the motion, and following a two day trial, Jones was convicted on four counts of the indictment.

In determining whether there has been a violation of the Sixth Amendment right to a speedy trial, applicable to the states through the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U. S. 213, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967), we must "engage in a difficult and sensitive balancing process," *Barker v. Wingo*, 407 U. S. 514, 533, 92 S. Ct. 2182, 2193, 33 L.Ed.2d 101 (1972), in which four factors are of primary importance: (1) length of delay, (2) reasons for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530, 92 S. Ct. at 2191-92; *see Erbe v. State*, 276 Md. 541, 546-47, 350 A. 2d 640, 643 (1976); *Smith v. State*, 276 Md. 521, 527-28, 350 A. 2d 628, 632-33 (1976); *Epps v. State*, 276 Md. 96, 104-09, 345 A. 2d 62, 68-71 (1975).

### (1) *Length of Delay*

This Court concluded in *Epps v. State, supra*, 276 Md. at 111, 345 A. 2d at 72, that a one-year, 14-day interval between arrest and trial is "presumptively prejudicial," requiring us to engage in the balancing procedure outlined in *Barker*. *See also Smith v. State, supra*, 276 Md. at 528, 350 A. 2d at 633 (16-month delay). Since the two-year, five-month interval between Jones' arrest and trial was of considerably more than twice the duration of that in *Epps*, we are bound to inquire into the other factors included in the balancing process.

### (2) *Reasons for the Delay*

As this Court pointed out in *Smith v. State, supra*, 276 Md. at 528, 350 A. 2d at 633, different reasons for delay in prosecuting a defendant should be assigned different weights. In this regard a continuum exists whereby a deliberate attempt to hamper the defense would be weighed most heavily against the State, a prolongation due to the negligence of the State would be weighed less heavily

against it, a delay caused by a missing witness might be a neutral reason chargeable to neither party, and a delay attributable solely to the defendant himself would not be used to support the conclusion that he was denied a speedy trial. *Id.* at 529, 350 A. 2d at 633. While we must scrutinize the entire interval between arrest and trial, and attempt to ascribe reasons for particular delays, it is not possible or even desirable to do so with mathematical precision; we will not count up the time chargeable to the State, that chargeable to the defendant, and those delays attributable to neutral reasons, multiply the number of days or months by a parameter assigned for each particular reason and then dismiss the indictment if the defendant ends up with the lower tally. Instead, delays must be examined in the context in which they arise and therefore a lengthy uninterrupted period chargeable to one side will generally be of greater consequence than an identical number of days accumulating in a piecemeal fashion over a long span of time. Finally, we must always bear in mind that the State has the duty to bring the defendant to trial, *Barker v. Wingo, supra,* 407 U. S. at 527, 92 S. Ct. at 2190, and thus lengthy delays by the State, particularly in the face of a defendant's assertion of his right, are especially significant.

Turning to the present case, we conclude that the reasons for the delay can best be analyzed by dividing the 29-month span into three periods: (1) from July 12, 1972, the date of Jones' arrest, to July 21, 1973, the end of his trial in federal court on narcotics charges; (2) from July 21, 1973, to June 26th of the following year, the day Jones waived his right to a speedy trial so that attorney Bailey could represent him; and (3) from June 26, 1974, to December 11, 1974, the date on which Jones' trial finally commenced. As discussed below, we determine that whereas the initial delay of one year and the final delay of six months were largely the result of the defendant's own actions, the 11-month delay between July 1973 and June 1974 was attributable substantially, if not entirely, to the State's dilatoriness.

Despite the petitioner's contentions to the contrary, the initial year's delay was not the result of conduct which may

be charged to the State. It is clear that Jones either initiated or acquiesced in the postponement of his trial for substantial periods of time prior to July 1973 — by written agreement, he consented to the January 8, 1973 scheduling of his trial on escape charges, with that trial to be completed prior to the commencement of trial on the narcotics indictment in the present case; he explicitly waived his right to a speedy trial from April 5 to May 25; [3] and, through the apparent failure of his attorneys to inform the federal district court that a June 25 trial date in the state case had been set, he allowed a conflict between the two trials to result, causing a postponement of the state trial until after the completion of the federal case in July. Although the State may have been accountable for other short periods during this interval, had the petitioner been brought to trial promptly after the conclusion of his federal trial, this Court would have had little difficulty in rejecting a claim that he was denied a speedy trial.

We now turn our attention to that interval of 11 months following Jones' federal trial, a delay which we consider to be crucial in this case. As mentioned in our summary of the facts, little occurred during this period in connection with the disposition of the narcotics charges pending against Jones. The petitioner argues, as might be expected, that the delay between July 1973 and June 1974 was the result of inexcusable footdragging on the part of the prosecution. The State, while admitting at oral argument before this Court that this interval is "the most difficult to specifically point out the reasons for," nonetheless attempts to justify its inaction in two basic ways: first, that during this time there were ongoing investigations, resultant indictments, and trials which had originated in allegations of corruption

---

3. On April 5, Bailey informed the state's attorney's office that, due to other commitments, he wanted the trial postponed and that the defense was waiving its right to a speedy trial until further notice. However, at a May 25th hearing before Judge Proctor to determine, among other things, who was representing Jones at that time, he emphatically stated that Bailey no longer represented him and that his sole attorney was Stephen Miles. We conclude, therefore, that the waiver by Bailey must be deemed to have been explicitly terminated as of the date of that hearing. In this respect, Jones testified at trial that he had discharged Bailey because he "didn't want him to keep holding [the] case up."

related to Jones' prosecution, and second, that during this interval Jones' attorneys were actively involved in plea negotiations on his behalf. We are unpersuaded, however, that these rationalizations in any way justify the delay amounting to nearly *one year*, particularly since a year had already passed and Jones had asserted his speedy trial right both prior to and during this 11-month interval.

It is true that in November of 1972, four months after Jones' arrest, Governor Mandel issued a directive to the Attorney General to investigate allegations of official corruption in connection with Jones' prosecution and escape from the Baltimore County jail. It is equally true that this investigation eventually led to prosecution of two attorneys who represented Jones as well as to a collateral probe of misfeasance in the office of the State's Attorney for Baltimore County. We do not believe, however, that these activities by the State in any way served to excuse the delay between July 1973 and June 1974 or in any way constituted "a cloud of corruption," *Jones v. State, supra,* 29 Md. App. at 196, 348 A. 2d at 64, over the *petitioner's* narcotics case which mandated the postponement of Jones' trial until all taints of official misconduct were eradicated.

Although one of Jones' attorneys, Robert Frank, was under investigation during various stages of the prosecution of the petitioner, we discern no reason why this should have interfered with the orderly disposition of the narcotics charges against Jones. Frank was tried in January and February of 1973 on charges of attempting to bribe the Deputy State's Attorney for Baltimore County and, though acquitted, admitted in the course of that trial the payment of $3,000 to influence that public official in actions unrelated to Jones; however, this proceeding occurred during the interval which we have already ascribed to the defendant and at a time when Frank was not even representing Jones. Although disciplinary proceedings were pending against Frank during the interval presently under consideration, and he ultimately was disbarred in the autumn of 1974, *Maryland State Bar Ass'n v. Frank,* 272 Md. 528, 325 A. 2d 718 (1974), we do not perceive how this can justify the

State's failure to bring Frank's client to trial.[4] We agree, moreover, with Judge Davidson's analysis in her dissenting opinion in the Court of Special Appeals that "if the State's reason for delaying Jones' trial was, in fact, to await the outcome of the disbarment proceedings against Frank, it should have at least expressly so notified him, so that he might choose other counsel and obtain a speedy trial." 29 Md. App. at 222, 348 A. 2d at 78.

The State also attempts to justify the delay from July 1973 to the following February in Jones' trial as being a direct result of the investigation of Stephen Miles, another of Jones' lawyers, and the prosecution of officials in the state's attorney's office on charges wholly unrelated to the petitioner. On July 20, 1973, Miles, who represented Jones at that time, was indicted on charges which included conspiracy with the petitioner (named by the State as an unindicted co-conspirator) to bribe the Deputy State's Attorney. His trial on those charges commenced in the latter part of February 1974 and he was acquitted on March 11 of that year. During this period, the prosecution of Baltimore County State's Attorney Samuel Green and an investigator, Louis Irvin, also took place. In its brief the State contends that "the ultimate responsibility must lie with Petitioner himself for this period of time since his own counsel precipitated the investigations and indictments through their own activities." We do not agree. Quite to the contrary, for several reasons we view the State's explanation of the delay as nothing more than a concocted diaphanous smoke screen. The record discloses that on August 22, 1973, a mere four weeks after the termination of Jones' federal trial, an Assistant Attorney General sent a letter, the body of which we quote in its entirety, to Charles Ruppersberger, Assistant State's Attorney for Baltimore County (with a copy to Judge

---

4. We note, as did Judge Davidson in her dissenting opinion in the Court of Special Appeals, 29 Md. App. at 222 n. 7, 348 A. 2d at 78, that at the time of the disciplinary proceedings against Frank, the Maryland Rules did not provide for the suspension of attorneys pending final decision on the charges by this Court. *See* Rule BV8. Even under the presently applicable rules, only those attorneys convicted (and Frank was not) of a crime involving moral turpitude may be suspended from the practice of law pending the disposition of the disciplinary proceedings. *See* Rule BV16.

Proctor), which indicates expressly or implicitly that Jones' trial and the Attorney General's investigation would not seriously interfere with one another so as to prevent either from proceeding to a conclusion:

> "The purpose of this letter is to confirm the oral response of this office to your question 'would the trial of John E. (Liddy) Jones by the State's Attorney's Office of Baltimore County interfere with the investigation currently being conducted by the Attorney General's office?' *I want to again assure you that the trial of Mr. Jones would not interfere with the aforesaid investigation.*
>
> "You should be aware, however, inasmuch as Stephen Miles, Esquire may be trial counsel for Mr. Jones, that the case of *State v. Miles* is scheduled for trial beginning November 12, 1973, and that Mr. Miles may be called as a witness in the case of *State v. Irvin,* scheduled to begin October 9, 1973 and *State v. Green,* scheduled to begin October 23, 1973." (Emphasis added.)

Moreover, Miles did not even represent Jones after September 6, 1973, and therefore Miles' own trial or his appearance at the trial of Green or Irvin was no longer of any consequence, if it ever could have justified a delay in the Jones trial, after the beginning of September. Finally, Jones at all times had an attorney ready to go to trial, and if the complement of prosecutors in Baltimore County was depleted, as the State seems to suggest, by allegations of corruption in the state's attorney's office, it was incumbent upon the State to utilize existing procedures for the appointment of another prosecutor.[5] That simple expedient would have removed what the State now asserts was its fear that the trial would be conducted under a "cloud of

5. As we recently pointed out in Sinclair v. State, 278 Md. 243, 246 n. 1, 363 A. 2d 468, 470 (1976), both the Constitution and Code of Maryland provide remedies for such a contingency as existed here. *See* Md. Const., Art. V, § 3 (permitting attorney general to prosecute upon direction of governor or General Assembly); Code (1974), Courts and Judicial Proceedings Article, § 2-102 (a) (allowing court to appoint temporary counsel for the State).

corruption" and would have avoided the denial of the petitioner's speedy trial right ultimately resulting from the State's failure to bring Jones to trial promptly.

The delay from the end of February to June 26 also must be weighted against the State. On February 8, Judge Proctor in the Circuit Court for Baltimore County postponed the February 26 trial date to "sometime during the April Term of Court," due to the unavailability of judges resulting from the trial of cases in the aftermath of the investigation of the state's attorney's office. We conclude, however, that delay due to the lack of a judge to preside at a defendant's trial is delay chargeable to the State. See Smith v. State, supra, 276 Md. at 529, 350 A. 2d at 633. The State's suggestion, therefore, that the delay from February to at least sometime in April should not be attributed to it is wholly without merit.[6] And with respect to the delay from May to mid-June, we need only note that the State's brief concedes that its election to proceed against Jones' co-defendants first requires that period to be charged to it. Arguably, only the delay during April can possibly be classified as neutral; however, we conclude that it is more likely than not chargeable to the State since the record does not reflect any reason for the delay at this time, and the earliest possible trial date in any event was sometime in the April term, which did not even begin that year until the 8th of that month.

In a desperate effort to extricate itself from this otherwise inexplicable situation, the State secondly offers the fact that some plea negotiations were conducted during a short portion of this 11-month period. The only references in the record to such negotiations consist of the January 9, 1974 letter from Benjamin Bronstein, the Deputy State's Attorney, to Frank, in which Bronstein noted his recollection of conversations which had led him to believe that Frank was "not necessarily concerned with the trial of the Jones case but only in plea negotiations," and Frank's

6. We note that even though the judges of the Third Judicial Circuit (which includes Baltimore and Harford Counties) may have been occupied with the trial of other cases in the winter of 1974, a mechanism exists to ameliorate just such a situation. See Md. Const., Art. IV, § 18A.

response the next day, admitting having discussed plea negotiations on a number of occasions, but asserting that any such discussion was irrelevant to his client's demand for a speedy trial. Under these circumstances, we agree with Judge Davidson that "[t]he right to negotiate for a plea need not be relinquished to avoid an inference either that a delay was caused by the accused or that a delay otherwise attributable to the State should be excused." 29 Md. App. at 225, 348 A. 2d at 79. No reason appears to us why the State should not be required to provide a prompt trial, whether or not the parties are engaged in plea negotiations.

The third and final period, from June 26 to December 11, 1974, when Jones' trial commenced, to a large degree was the result of the petitioner's own actions and we need pause only momentarily to consider it. He specifically waived the right from June 26 to November 18 so that attorney Bailey could re-enter the case and represent him at trial. The final three-week period, due to a postponement by Bailey apparently without the acquiescence of Jones, at the least cannot be charged to the State.

What we have here, thus, is an 11-month delay overwhelmingly chargeable to the State sandwiched between an earlier delay of one year and a subsequent delay of nearly six months, both of which are due to neutral reasons or to the actions of Jones. We note initially that the final six-month delay because of the unavailability of Bailey in no way serves to mitigate the failure of the State over the preceding 11 months to bring Jones to trial. Moreover, in light of our recent decision in *Smith v. State, supra,* we are compelled to conclude that the initial year's delay caused to a substantial extent by Jones himself similarly in no way excused the State from its duty to bring the defendant to trial during the crucial 11-month period, particularly in the face of Jones' repeated demands. In *Smith,* the accused was originally scheduled to be tried on rape charges some nine months after his arrest, having first been committed to a state hospital for mental examination and (three months after his arrest) found competent to stand trial. However, just prior to the scheduled trial date, the State discovered

that its chief prosecuting witness was no longer within the jurisdiction; the trial was postponed, and though the witness was located and a new date for trial was immediately sought, it was not rescheduled until a date some five months later, notwithstanding the defendant's prior demand for a speedy trial. No excuse was offered for that five-month delay, which we termed "crucial," and we concluded, as we do in respect to the 11-month delay here, that it was caused by governmental tardiness and neglect. 276 Md. at 530-31, 350 A.2d at 634-35. We said:

> "In view of the amount of time which had already elapsed, the petitioner's demand for a speedy trial and the circuit court's evident concern over the issue, the State should have made certain that the trial was promptly reset for a date in the immediate future, even if that required the rescheduling of other cases. . . . We add that when a defendant makes known his desire to be furnished his constitutionally guaranteed speedy trial, it is incumbent upon the State to provide for trial at the earliest practicable date. *Epps v. State, supra,* 276 Md. at 114-15, 345 A. 2d at 74; *Jones v. State, supra,* 241 Md. at 610-11." *Id.* at 531, 350 A. 2d at 634.

In addition we observe that where a demand has been made for a speedy trial, where almost a year has elapsed, for whatever reasons, since the time of the defendant's arrest, and where any impediment to trial attributable to the accused's actions has been removed, it is incumbent upon the State to bring the accused to trial without further delay.

### (3) *Defendant's Assertion of His Right*

It is not disputed that Jones' counsel and Jones himself repeatedly asserted his right to a speedy trial. Motions to that effect were filed on January 2, 1973, on November 14, 1973, and on November 21, 1974; motions to dismiss for lack of a speedy trial were filed on May 15 and November 21, 1974. Moreover, various items of correspondence between his lawyers and the State in January and March of 1974

substantiate Jones' desire for a speedy trial. The State contends, however, that the petitioner's conduct, as reflected in his "numerous changes of counsel," and in his behavior at trial, belied his formal demands.

Although there indeed were a number of attorneys involved in this case at various times, at no point was Jones without counsel, and the matter of who represented him of record at any particular time is not complicated. In 1972, Jones had four attorneys: Stephen L. Miles (a member of the Maryland bar), whose appearance was entered on August 21, as well as F. Lee Bailey and Gerald Alch (both of Boston, Massachusetts), and Gerald Kroop (of the Maryland bar) whose appearances were entered on October 13. Miles' appearance was stricken on January 22, 1973, shortly after entry of the appearance of William H. Murphy, Jr. as local counsel. At a hearing on May 25, 1973, however, Jones stated that only Miles represented him, that he had discharged Bailey and Alch due to their unavailability at that time, see note 3 *supra*, and that he did not want either Murphy or Kroop as counsel. On June 7, 1973, Robert H. Frank (also a member of the Maryland bar at that time) entered his appearance as co-counsel with Miles; in September, however, Miles' appearance was stricken, leaving Frank as Jones' only attorney. In June of 1974, Frank's appearance was stricken and Bailey once again became Jones' attorney, this time with William W. Carrier as local counsel.

The assertion that these "numerous changes of counsel" indicate that Jones did not actually desire a speedy trial is without merit. Although Bailey's and Alch's appearances had never been formally stricken, the record is clear that they had actually been discharged by Jones, and that the court and the prosecutors were so informed. Moreover, Bailey's discharge in May of 1973, and his subsequent rehiring in June of 1974, is perfectly understandable, since Bailey had been indicted in Florida in May 1973 on federal mail fraud and conspiracy charges (both later dismissed) and he was in no position to represent Jones until April 25, 1974. *See United States v. Bailey*, 399 F. Supp. 526, 528 (M.D. Fla. 1975). We fail to see how this or any of the other

attorney changes in this case can be construed to imply that the petitioner did not in fact desire a speedy trial.

Nor can we simply infer from Jones' conduct on the first day of his trial that his prior demands had been disingenuous. At trial on December 11, Jones expressed his dissatisfaction with Bailey's representation of him and stated that because of this he was not prepared to begin the trial on that day. We do not conclude, however, that this isolated request in any way detracted from the sincerity of Jones' previous efforts, over the course of two and one half years, to obtain a prompt trial. The rationale set forth in Judge Davidson's dissent, 29 Md. App. at 230-31, 348 A. 2d at 82-83, involving the strained relations which had developed between Jones and his attorney as a result of disagreement over the conduct of his defense, is certainly a plausible explanation. Moreover, *Barker v. Wingo, supra,* 407 U. S. at 531, 92 S. Ct. at 2192, requires us to give repeated demands for a speedy trial "strong evidentiary weight," and we believe that those demands should not be discounted unless the evidence on that point is very clear, as it was in *Barker.* There, counsel *admitted* at oral argument that his client probably did not want to be tried; for well over three years (of a total five-year delay) the defendant had made no assertion whatever of this right; and even after his first request, he again agreed to additional continuances. *Id.* at 534-36, 92 S. Ct. at 2194-95. Jones, unlike Barker, repeatedly asserted his desire for a speedy trial from the outset, and no concession has ever been made that the petitioner here did not in fact desire a speedy trial. The evidence from which we are asked to conclude that Jones did not want a speedy trial is tenuous; consequently, his repeated demands must be weighted in his favor.

### (4) *Prejudice to the Defendant*

Under Supreme Court guidelines, an affirmative demonstration of prejudice is not necessary to prove that a defendant was denied his constitutional right to a speedy trial. *Moore v. Arizona,* 414 U. S. 25, 26, 94 S. Ct. 188, 189, 38

L.Ed.2d 183 (1973) (per curiam). If a defendant can show prejudice, of course, he has a stronger case for dismissal.

Jones asserts that he was prejudiced at trial because exculpatory testimony from three witnesses was not available to him. The record indicates that co-defendant Kevin Darby, one of the prospective witnesses, was killed in May of 1973, and that prior to that time he was incarcerated in a mental institution and was not expected to attend his own trial. Since we have indicated that, had Jones been brought to trial promptly after the end of his federal trial in July 1973, denial of his speedy trial right probably would not have occurred, Jones cannot rely on prejudice from Darby's death.[7] Jones testified that Joseph Perry, another prospective witness, died some time in 1973, and in final argument on the issue at trial, his attorney mentioned the disappearance of a third witness, Andrew Strickland, who had originally been another of Jones' co-defendants. Since it is not clear from the record what testimony Jones claims Strickland might have offered, and since it may be that Perry, as well as Darby, had died before the critical period of delay occurred, we cannot determine whether Jones suffered an actual impairment of his defense.

We do note, however, that factors of lesser importance are also to be considered in assessing prejudice:

> "The speedy trial guarantee recognizes that a prolonged delay may subject an accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving — uncertainties that a prompt trial removes." *Strunk v. United States*, 412 U. S. 434, 439, 93 S. Ct. 2260, 2263, 37 L.Ed.2d 56 (1973).

Jones was forced to endure the prospect of undergoing his trial in state court for well over a year following his

---

7. We note also that, in his written agreement with the State of November 27, 1972, relating to the trial of his escape case, Jones waived any right to future postponement of his trials on either the escape or the narcotics charges on the ground of the unavailability of Kevin Darby as a witness.

conviction on federal charges in July of 1973, and therefore may have suffered needlessly for 11 months due to the State's inactivity in disposing of his case promptly. We also consider, as we must in every criminal cause, that, although the right to a speedy trial is a protection for the accused, broader societal interests are also effectuated by the enforcement of the guarantee. *See Barker v. Wingo, supra,* 407 U. S. at 519-21, 92 S. Ct. at 2186-87; *Dickey v. Florida,* 398 U. S. 30, 42, 90 S. Ct. 1564, 1571, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring); *Smith v. State, supra,* 276 Md. at 533-34, 350 A. 2d at 636.

Having examined the facts of this case as they relate to the four-factor analysis of *Barker,* we conclude that the petitioner was denied his Sixth Amendment right to a speedy trial. As required by the ruling of the United States Supreme Court in *Strunk v. United States, supra,* 412 U. S. at 440, 93 S. Ct. at 2263, the indictment upon which the petitioner was convicted must be dismissed.

> *Judgment of the Court of Special Appeals reversed; case remanded to that Court with directions that it reverse the judgment of the Circuit Court for Calvert County and remand the case to that court with instructions to dismiss the indictment.*
>
> *Costs to be paid by Baltimore County.*

*Murphy, C. J., dissenting:*

I respectfully dissent from the holding of the majority that the petitioner's constitutional right to a speedy trial was violated. In my judgment, nothing in the terribly tedious and tortured history of this case from the time of Jones' arrest on July 12, 1972, to his trial on December 11, 1974, warrants the ultimate conclusion reached by the majority that the constitutional precepts enunciated in *Barker v. Wingo,* 407 U. S. 514, 92 S. Ct. 2182,

33 L.Ed.2d 101 (1972), and its progeny, mandate that Jones be set free without trial because of the State's "dilatoriness" in bringing the case to disposition.

The majority divides the 29-month delay in bringing Jones to trial into three parts. As to the period from July 12, 1972, to July 21, 1973, it properly acknowledges that the delay was completely attributable to Jones' own actions. It similarly acknowledges that the delay from June 26, 1974, to December 11, 1974, was also attributable solely to Jones. It identifies the 11-month delay from July 21, 1973, to June 26, 1974, as the crucial period in assessing whether the State denied Jones' constitutional right to a speedy trial; it attributes the delay during this period entirely to the State's procrastination.

Stripped of excessive detail, the chronology of significant events amounts essentially to this. The five-month period following Jones' arrest was taken up with the usual bevy of motions and preliminary skirmishing between Jones and the prosecutor. During this period no less than five lawyers, including F. Lee Bailey and Stephen L. Miles, entered their appearance on behalf of Jones. While a trial date in January of 1973 was agreed upon, Jones nevertheless filed a motion for a speedy trial on January 2, 1973. The State responded promptly by setting the case for trial. Just as promptly, Jones, acting through Bailey, waived his right to a speedy trial by letter dated April 5, 1973, wherein it was stated that "the defense does not demand immediate trial until such time as you are notified to the contrary." By May of 1973, Jones had discharged four of his lawyers, including Bailey, leaving Miles as his only counsel. Bailey did not, however, strike his appearance. Robert Frank entered his appearance as counsel for Jones on June 7, 1973. Shortly thereafter, Jones went to trial on federal charges; that trial lasted from June 18, 1973, to July 21, 1973.

The State took no immediate action to set the case for trial following Jones' conviction in the federal court, undoubtedly because it considered Jones' waiver of a speedy trial still viable. In September of 1973, Miles struck his appearance as counsel for Jones; he had been indicted in July of 1973.

Frank continued as Jones' counsel. The record indicates that plea negotiations were taking place during the summer and early fall of 1973. On November 14, 1973, Jones filed his second motion for a speedy trial, acting through Frank. By agreement of counsel, the case was set for trial on February 26, 1974, although Frank indicated his desire that the case be tried in January. Frank was then facing disbarment proceedings, with a hearing before a three-judge panel set for February 19, 1974. Jones' trial date was postponed, with the understanding that he would be arraigned on March 11, 1974, and a firm trial date fixed at that time. Frank was unavailable on March 11, 1974, and the hearing was postponed. Arraignment was reset for April 29, 1974, and trial was scheduled for June 26, 1974. As the trial date approached, Jones complained to the court that he was not ready for trial; he said that Bailey was still his lawyer, and he wanted him to represent him at the trial. Frank struck his appearance on June 19, 1974, and Bailey reentered the picture as counsel on June 26, 1974.

Bailey promptly waived Jones' right to a speedy trial until he could be available for trial. A trial date was agreed upon for November 18, 1974, but Bailey subsequently indicated that he would not be available on this date. The case was rescheduled for trial on December 4, 1974; Bailey appeared as Jones' counsel. After the jury had been empaneled, Jones moved for a change of venue, which was granted, The case was removed to another county and brought to trial a week later on December 11, 1974. Consistent with his past actions, Jones undertook to discharge Bailey and employ new counsel. Jones claimed he was not ready for trial, that he had 300 witnesses to call from all over the United States and needed a postponement. The court denied the request for a postponement. In desperation, Jones told the court, "I'd like to have a recess so I can think of something else. . . ." Thereafter, Jones sought to disrupt the trial and eventually had to be shackled and gagged.

The majority concludes that the facts show that Jones at all times had an attorney ready for trial, and that the delays attributable to him did not serve to mitigate the State's

failure to bring him to trial between July 21, 1973 and June 26, 1974. While I agree that the delay attributable to Jones did not insulate the State from discharging its duty to bring Jones to trial, I think that the critical period began with the filing of the second speedy trial motion on November 14, 1973, and ended on June 26, 1974, when Jones again waived his right to a speedy trial. As the majority opinion indicates, truly exceptional circumstances existed during this period; among other things, the State's Attorney was on trial during January and February of 1974; Miles also was brought to trial in February on the indictment pending against him — an indictment which implicated Jones. Frank, although previously acquitted of criminal charges brought against him, was then Jones' only counsel and he was facing disbarment proceedings. Not all of the delay during this critical period was chargeable to the State; part of it was plainly due to Frank's unavailability and his practical inability to try the case during the pendency of his disbarment proceedings.

As I see it, the State's dereliction in bringing the case to trial during the critical period, and particularly in the spring of 1974, was not — all circumstances considered — so gross as to call for the ultimate sanction of dismissal of all charges against Jones. *Barker v. Wingo, supra,* requires that we engage in a "difficult and sensitive balancing process" in passing upon a claimed denial of the constitutional right to a speedy trial; it calls for a functional analysis of the right in the particular context of the case under consideration. In view of the extraordinary circumstances involved in Jones' case, and taking into account the four factors applicable in determining whether the constitutional right to a speedy trial has been denied, and giving them appropriate weight, I would agree with the Court of Special Appeals and affirm the judgment. In so concluding, I do not intend to indicate approval of the State's handling of the case. On the contrary, it appears to me that the State unwittingly permitted itself to be manipulated by Jones, acting on his own and through a battery of attorneys, it being his grand design to obtain a dismissal of the indictment for lack of a speedy trial. That

such a result ensued in this case under the majority's opinion should serve as a bitter lesson to prosecutors and judges throughout the State not to risk playing Russian roulette with the public's right to have criminal defendants brought to the bar of justice on a timely basis.

Judge Smith authorizes me to state that he concurs in the views expressed herein.