## MILLER *v.* STATE

[No. 304, September Term, 1964.]

Decided May 28, 1965.

The cause was argued before Prescott, C. J., and Hammond, Horney, Sybert and Oppenheimer, JJ.

*Morris Lee Kaplan*, with whom were *Michael Lee Kaplan* and *Philip A. Provenza* on the brief, for appellant.

*John C. Cooper, III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Edward Angeletti, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

Hammond, J., delivered the opinion of the Court.

Officer Marshall of the Narcotics Squad of the Baltimore Police Department testified at the trial of this case that in August 1962 he went with an informer named Matthews to a lunchroom at which the appellant Miller, known as Uncle Bernie, was the manager and short order cook. Matthews asked Uncle Bernie if he had any eggs, meaning not the standard fare of the breakfast table, either boiled, poached, coddled, shirred, fried, scrambled, or in an omelet, but in the argot of those in the world of narcotics, "heroin in a capsule." Uncle Bernie replied that he had no eggs but he did have two eight-dollar packs of heroin he could let them have for "a fin" each.

Officer Marshall handed a ten-dollar bill (two fins), which had been given him for the purpose by the Narcotics Bureau, to Uncle Bernie, who passed it to a man standing behind the counter whose name was Roosevelt Jones, but apparently was better known to his friends as "June Bug," and said: "Give me a deuce, June Bug." Uncle Bernie then left the lunchroom and, in a minute or so returned, saying: "You are O. K. man, it's on the seat, the driver's side." Officer Marshall immediately went to the car and found on the driver's side of the front seat two glassine envelopes, each of which contained white powder, which later proved to be heroin.

On October 28, some three months after this occurrence, the police procured a warrant for the arrest of the appellant. It was not served because he had left Baltimore for life in New York. In the Spring of 1964 he was arrested in New York on a federal warrant charging him with travelling across State lines to avoid prosecution, contrary to the Act of Congress codified in 18 U. S. C., Sec. 1073. He was then returned to Baltimore. On being confronted by Officer Marshall at police headquarters, the appellant said of Marshall, according to the testimony of Lieutenant Simonsen: "I saw him in my restaurant on that night. I figured he was a police." When asked why he had left Baltimore, he answered: "I thought he [Marshall] was a police and I did not want to incriminate myself."

Judge Harris found Miller guilty generally on an indictment charging, in three counts, possession, sale and control of heroin, and, on an addendum, of being a second offender, and gave him the minimum sentence.

Miller contends that his arrest was illegal because the Maryland warrant was not served until almost two years after the happening of the crimes charged and, therefore, his incriminating admission after he returned to Baltimore and, indeed, all that thereafter took place including his indictment, trial and conviction, were invalid, nugatory and void.

No question was raised as to the validity of the warrant or of the proceedings by which Miller was brought before the court for trial either before the trial began, under Md. Rule 725b, or at the trial, with at least two consequences. First, the question is not properly before us for review under Rule 885, ap-

plicable to appeals in criminal cases under Rule 772. Second, the record is bare of details or specifics of what happened after Miller was arrested in New York on the federal warrant and as to how and by what authority he was returned to Baltimore. There is an indication that he was extradited. It is not possible on this record to find that Miller's coming into the custody of the Baltimore police was illegal. In any event, assuming the state warrant was used in 1964 in bringing Miller into the hands of the Baltimore police, we have held in *Price v. State*, 235 Md. 295, where the claim was of unconstitutional delay between the issuance and service of a warrant, that the general rule, with exceptions not here pertinent, is that the right to a speedy trial does not arise until a prosecution has been instituted and an accused cannot successfully complain of delay in the institution of the prosecution if it is within the applicable period of limitations.

Here the time lag between the day of the crime and the swearing out of the warrant was reasonable and understandable. The delay in the apprehension of Miller was due to his flight to avoid being apprehended, a circumstance which deprives him of any possibility of showing or availing himself of prejudice, if such a possibility otherwise would be open to him.

Miller's defense to the charges against him was that June Bug was the real principal in the case and he, Miller, but an innocent bystander. His claim of the insufficiency of the evidence really is a claim that the court rejected his version of what took place at the restaurant and accepted that of the police. The version of the police clearly was enough, if believed (and Judge Harris said he believed it), to show that Miller was guilty. In addition, there was his incriminating admission.

*Judgments affirmed.*