JOHN CARROLL DORSEY *v.* STATE
OF MARYLAND

[No. 288, September Term, 1976.]

*Decided February 2, 1977.*

526

The cause was argued before MOYLAN, MENCHINE and MOORE, JJ.

*Stephen L. Snyder,* with whom was *Joel L. Berger* on the brief, for appellant.

*John Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Henry E. Dugan, Jr., Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Michael Patryn, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, John Dorsey, was convicted at a jury trial in the Criminal Court of Baltimore (Hargrove, J.) on two counts of distributing a controlled substance, heroin, Md. Code, Art. 27, § 286 (1957 ed., 1976 Repl. Vol.), for which he received two concurrent ten year sentences.[1] On this appeal, the contention is strongly urged that the court below erred in failing to grant a motion to compel disclosure of the name of an informant used by the State in its investigation. Also raised are issues of pre-arrest delay and denial of appellant's Sixth Amendment speedy trial right. Finding each contention devoid of merit, we affirm.

In a pretrial motion upon which a full hearing was conducted immediately prior to trial, appellant sought to compel the State to reveal the name of an unidentified informant who introduced Detective Larry Strickland of the Drug Enforcement Detail, Baltimore City Police, to the appellant on July 24, 1974. The testimony of Strickland and two other police officers engaged in surveillance disclosed that the informant, referred to as "SE", met with Dorsey on

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, May 31, 1977.

1. The appellant was tried jointly with a co-defendant, Cheryl A. Jordan, who was charged with conspiracy to distribute a controlled substance and related offenses. The co-defendant was acquitted of that charge but convicted on a possession count.

July 23, 1974, for the purpose of setting up a meeting between Strickland and the appellant for a purchase of heroin. Appellant and "SE" arranged to meet again the following day in the 1800 block of Lorman Street, Baltimore.

Detective Strickland and the informant, riding in an unmarked official government car, with the two other officers observing from a distance, returned as arranged the next day, July 24. As the two pulled up, appellant walked over to their car and immediately inquired of the undercover officer, Strickland, known to him only as "the man from the Eastern Shore," as to what quantity he desired. Detective Strickland offered to purchase 10 bundles. (This later measured out to 107.5 grams.) Dorsey then told Strickland that the price would be $125 per bundle and instructed him to return in several hours. According to Officer Strickland, the informant took no part whatsoever in the negotiations: "The only part he played in this was introducing me to Dorsey," he testified.

Between 6:00 and 6:30 p.m., that same day, the detective and "SE" returned to the 1800 block of Lorman Street. They left their car and met the appellant on the street. As they were conversing with Dorsey, an unidentified male, known to the police only as "Alias Ronnie," informed the appellant that the drugs would not be ready for another twenty minutes. Again, a later meeting was arranged.

Finally, at a third meeting on July 24th, at approximately 9:30 p.m., the purchase was consummated at the same location. Detective Strickland, with "SE" riding in the passenger seat, pulled up next to the appellant. Dorsey thereupon entered the passenger side of the automobile while, as prearranged, the informant exited the vehicle, admittedly "to avoid being part of the transaction." Immediately thereafter, according to Detective Strickland and the other two officers who were again observing from a safe distance, appellant's co-defendant drove up and parked behind the government car. "Alias Ronnie," who had been standing near the car, then entered the co-defendant's vehicle and emerged with a package under his arm. He gave the package to the appellant who in turn delivered it to

Strickland. After examining the contents, Strickland presented $1125 in currency (the serial numbers of which had been previously recorded) to the appellant who shortly departed. The informant was absent from the car during the entire exchange.

A second sale of 5 bundles (67.3 grams) of heroin was transacted on July 31 when Strickland, pursuant to arrangements made with Dorsey on July 24th, returned to the 1800 block of Lorman and met with the appellant. A similar procedure was followed but the informant had nothing to do with this meeting and was not present.

In the ensuing months, there was a continuing series of investigations in the same district of Baltimore City, not involving the appellant, in which Detective Strickland remained "undercover." For this reason, he did not obtain an arrest warrant for the appellant until January 22, 1975. The warrant was not executed until February 25, 1975. In explanation of the month's delay, the officers testified they often wait a period of time for arrest warrants to "stack-up" before apprehending the individuals involved.

### Right to Withhold Informant's Name

The right of the State to withhold from disclosure the identity of persons who furnish the police with information concerning criminal activities is not unqualified. *Roviaro v. United States*, 353 U. S. 53, 60 (1957). In determining whether the State may legitimately keep confidential the name of the informant, the court must balance the public's interest in effective law enforcement with the accused's interest in preparing a defense.[2] 353 U. S. at 62. In *Roviaro*, Mr. Justice Burton, writing for the Court, stated: "Where the disclosure of an informer's identity, . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the balance tips in favor of the accused. 353 U. S. at 60-61. While the particular

---

2. Regardless of the outcome of the balancing test, the State may always opt to retain the confidentiality of its agent at the risk of being compelled to dismiss the criminal prosecution. *See* Roviaro v. United States, 353 U. S. 53, 61 (1957).

circumstances of each case are controlling, the factors to be considered are the nature of the crime charged, the possible defenses and the potential import of the informer's testimony. *Id.* at 62.

In *Drouin v. State,* 222 Md. 271, 286, 160 A. 2d 85, 93 (1960), the Court of Appeals stated that where "the name of the informer is useful evidence to vindicate the innocence of the accused, lessens the risk of false testimony or is essential to a proper disposition of the case . . . ," the informant's identity becomes "relevant and helpful to the defense of an accused" within the meaning of *Roviaro*. Whether disclosure is necessary to an accused's defense is within the sound discretion of the trial court. *Gulick v. State,* 252 Md. 348, 354, 249 A. 2d 702, 706 (1969); *Drouin v. State, supra,* 222 Md. at 286, 160 A. 2d at 93.

Upon the facts here present, we find this Court's decision in *Nutter v. State,* 8 Md. App. 635, 262 A. 2d 80 (1970), to be highly persuasive authority. In *Nutter,* police placed an informant on the street, in a high volume drug trafficking neighborhood, as part of their investigation. The police watched as the appellant made contact with the informant. Both individuals departed for a short while and when the informant returned he displayed two capsules of cocaine which he claimed he purchased from the appellant. Shortly thereafter the police, armed with a warrant, searched appellant's barbershop and discovered several more capsules of cocaine in a broken washbasin. Appellant was convicted of having under his control the narcotic drug Cocaine.

Chief Judge Orth, speaking for the court, reversed the conviction because of the trial court's failure to compel the State to disclose the identity of the informant. In making its determination of guilt, the trial court had relied not only upon the search of the barbershop, but also upon the events of the previous day when the informant allegedly purchased cocaine on the street from the appellant. In light of the fact that the informant was the *sole participant* in the sale and that appellant completely denied any involvement in the transaction, this Court declared the informant's identity to be essential to the defense.

Distinguishing cases where an informer is a mere observer as opposed to a participant, the court stated:

"We believe that if an informer is a participant, accessory or witness to the crime it is [only] a factor [and it does not constitute an exception to the privilege in and of itself] to be considered in determining whether his identity is necessary and relevant to a fair defense. And we feel that 'witness' as used in *Gulick* [and *Drouin*] means a material witness, in the sense that his testimony is *important* to a fair determination of the cause. . . . Thus in this context 'material' may be said to have a meaning more restrictive than its usual meaning. So, although an eyewitness to a crime is clearly a 'material' witness as that word is ordinarily used, if he is an informer, simply observing an illegal transaction but not participating in it, the fact that he observes the transaction does not necessarily make his possible testimony so important as to compel disclosure of his identity in the face of the rationale of the nondisclosure privilege." 8 Md. App. at 639, 262 A. 2d at 83-84.

Where the accused is an active participant, we said:

"Thus where the informer is an active participant in the illegal activities disclosed by him, his actions and identity can become part of the *res gestae* and concealment of his identity might hamper the accused in making his defense by depriving him of the testimony of a material witness." 8 Md. App. at 640, 262 A. 2d at 84.

The facts in the case *sub judice* clearly support the State's privilege at trial to protect the identity of its informant. Here the uncontroverted testimony reveals that the informant played no role in the actual negotiations or the sale of the illegal drugs. While the meeting on July 23 between appellant and the informer did involve a discussion of drugs, the testimony of Detective Strickland indicates

that the meeting was merely for the purpose of informing the appellant that "SE" had a friend who wished to purchase heroin and of performing an introduction. No discussion as to quantity, price or other terms took place at that time. All negotiations were between the appellant and Detective Strickland with the informer acting merely as an observer, from a distance. At the time the actual sale took place, the informer left the area so as not to be a part of the transaction. There is no dispute that "SE" was not involved at all with the July 31 sale. Appellant's defense was limited to attacking the police officer's credibility and ability to identify the appellant and we see no reason, in light of the purpose of the privilege, to require the State to produce the informant's name. The trial court's ruling was correct.

### Right to Speedy Trial

Appellant asserts that an almost 11-month period between the date of his arrest, February 25, 1975, and the date of his trial, January 14, 1976, amounted to a delay of constitutional proportions thereby violating his Sixth Amendment right to a speedy trial, applicable to the States through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U. S. 213 (1967). In the resolution of the speedy trial issue, we must scrutinize all the events which took place during this critical period. The relevant dates are as follows:

| | | |
|---|---|---|
| February 25, 1975 | - | Arrest |
| May 9, 1975 | - | Indictment filed |
| August 8, 1975 | - | Motion for Discovery and Inspection filed |
| | | Motion to Disclose Informant filed |
| August 23, 1975 | - | State's Answer to Motion for Discovery and Inspection filed |
| September 10, 1975 | - | Trial date-Postponed by State |

| | | |
|---|---|---|
| September 29, 1975 | - | Pretrial Motion Hearing-Postponed by State |
| October 23, 1975 | - | Trial Postponed-Illness of Defendant |
| December 15, 1975 | - | Trial Postponed-Assignment Office |
| December 16, 1975 | - | Trial Postponed-Assignment Office |
| January 14, 1976 | - | Trial |

In making our independent constitutional appraisal of whether the appellant's constitutional right to a speedy trial has been violated, we must "engage in a difficult and sensitive balancing process," *Barker v. Wingo*, 407 U. S. 514, 533 (1972), in which "the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, by considering the following four factors: (1) length of delay, (2) reasons for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant. *Barker, supra,* 407 U. S. at 530; *Jones v. State,* 279 Md. 1, 367 A. 2d 1 (1976), at 6; *Epps v. State,* 276 Md. 96, 104-09, 345 A. 2d 62, 71-77 (1975).

## (1) *Length of Delay*

As the Supreme Court stated in *Barker v. Wingo, supra,* 407 U. S. at 530-31:

> "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."

For purposes of making a determination as to whether the length of delay was violative of appellant's Sixth

Amendment right, we begin with the date on which the appellant became an "accused," *i.e.,* the date he was subjected to "actual restraints imposed by arrest and [held] to answer [the] criminal charge," until the date of trial. *United States v. Marion,* 404 U. S. 307, 320 (1971); *Smith v. State,* 276 Md. 521, 528 n.4, 350 A. 2d 628, 633 n.4 (1976). While there is no precise formula for computing an unconstitutional delay, we find the almost 11-month period, in the circumstances of this relatively uncomplicated drug case, between Dorsey's arrest and trial to be "sufficiently inordinate to constitute a 'triggering mechanism' " to prompt inquiring into the other factors which go into the balance. *Epps v. State, supra,* 276 Md. at 111, 345 A. 2d at 72. *See Barker v. Wingo, supra,* 407 U. S. at 530-31; *United States v. Butler,* 426 F. 2d 1275, 1277 (1st Cir. 1970); *Barnett v. State,* 8 Md. App. 35, 257 A. 2d 466 (1969); *Pyle v. State,* 34 Md. App. 60 (1976).

### (2) *Reasons for the Delay*

As Justice Powell wrote for the majority, in an oft quoted passage, in *Barker v. Wingo, supra,* 407 U. S. at 531:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." (Footnote omitted.)

At the outset, we conclude that the period between the October 23, 1975 trial date, which was cancelled due to appellant's illness, and the December 15, 1975 scheduled

proceeding, is attributable to the appellant and therefore may not be considered in the determination of whether Dorsey was denied a speedy trial. *Strunk v. United States,* 412 U. S. 434, 436 (1973); *Smith v. State, supra,* 276 Md. at 529, 350 A. 2d at 633. The additional one-month delay between the rescheduled trial date of December 15, 1975, and the ultimate hearing on January 14, 1976, caused by a postponement within the assignment office, is chargeable to the State, but we do not find it unreasonable.

It is the eight-month period between Dorsey's arrest, February 25, 1975, and the cancelled trial date of October 23, 1975, which we must examine most carefully. From the docket entries of the Criminal Court of Baltimore in this case, it appears that the first trial date was not scheduled until September 10, 1975. This date was continued, at the request of the State, for reasons unexplained by the record. A pretrial hearing on preliminary motions, set for September 29, was also cancelled by the State, apparently necessitating a trial date of October 23. We note the absence of any evidence that would indicate that the delay in appellant's trial was attributable in any respect to an effort by the State to hamper the appellant's defense. However, the State provides no reason at all for the 8-month interval between Dorsey's arrest and scheduled trial date of October 23, 1975. We must therefore conclude that the 8-month delay is chargeable to the State.

### (3) *Assertion of Right*

Bearing in mind that an accused has no duty to bring himself to trial, *Barker v. Wingo,* 407 U. S. at 527, nonetheless whether the defendant has asserted his right to a speedy trial and at what stage, are factors to be considered in the balancing process:

> "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a*

*defendant to prove that he was denied a speedy trial."* (Emphasis added.) *Barker v. Wingo, supra,* 407 U. S. at 531-32.

The only time appellant chose to raise the speedy trial issue was in his motion to dismiss,[3] heard in open court on January 14, 1976; trial began two days later and was concluded on January 22. At no earlier time did appellant request a speedy trial. This fact weighs against appellant's contention.

### (4) *Prejudice*

In considering the issue of prejudice to a defendant whose trial has been delayed, three interests of the defendant protected by the Sixth Amendment speedy trial right have been identified by the Supreme Court: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; 3) to limit the possibility that the defense will be impaired. *Barker v. Wingo, supra,* 407 U. S. at 532. Of these, the Court has placed the most emphasis on impairment of the defense of the accused. *Id.*

A demonstration of actual prejudice by the defendant is not required in order to find a speedy trial violation. *Moore v. Arizona,* 414 U. S. 25, 25-26 (1973). A delay of constitutional proportions in bringing a defendant to trial may:

> "[S]eriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion,* 404 U. S. 307, 320 (1971); *see Smith v. State, supra,* 276 Md. at 533, 350 A. 2d at 635.

Where the delay is "substantial", prejudice to an accused may be presumed, thus shifting the burden of going forward

---

3. Actually, appellant's counsel never filed a motion to dismiss the indictment but joined in his co-defendant's motion.

with evidence to the State. *Wilson v. State,* 34 Md. App. 294 (1976); *State v. Lawless,* 13 Md. App. 220, 232-33, 283 A. 2d 160, 170 (1971). As Judge Moylan wrote in *Lawless, supra:*

> "The middle position, and that used in this State, is that a certain *quantitative and qualitative degree* of delay gives rise to a rebuttable presumption of prejudice and will shift the burden of going forward with the evidence from the accused to the State." (Emphasis added.) 13 Md. App. at 232-33, 283 A. 2d at 170.

Under the facts presented here, we cannot conclude there was "substantial" delay so as to give rise to a presumption of prejudice. Quantitatively, the lapse of 8 months while significant, was not inordinate. In qualitative terms, we have a situation where the right was not timely asserted and where there is no suggestion of impropriety on the part of the State. *See Graham v. State,* 6 Md. App. 458, 251 A. 2d 616 (1969). With regard to *actual* prejudice, the appellant was out on bail, according to the court records, from shortly after his arrest through the conclusion of his trial. While we are mindful of the anxiety created by a protracted delay pending the resolution of criminal charges, we find no evidence before us to indicate any such "anxiety or concern" on the part of the appellant and, under the circumstances of this 8-month delay, we find no factors which would justify a finding of prejudice. *See Lee v. State,* 32 Md. App. 671, 683, 363 A. 2d 542, 549-50 (1976). Finally, with regard to the issue of prejudice to the ability of the appellant to present his defense, we similarly conclude that no prejudice resulted. Appellant did not himself testify and he presented no testimony of any other person at the pretrial hearing on his motion to dismiss, to show *concretely* how the delay hampered his defense, or, indeed, involved any other element of prejudice.

While we recognize the delay in bringing this appellant to trial, we resolve the issue of whether appellant was denied his right to a speedy trial against the appellant because

there is no evidence of prejudice resulting from this delay and appellant failed to assert his right at a more meaningful time.

## Pre-Arrest Delay

As previously noted, while the illegal transaction upon which the appellant was convicted occurred in July, 1974, an arrest warrant was not issued until January 22, 1975, and the appellant was not actually placed in custody until February 25. Appellant seeks to draw support from the Fifth and Sixth Amendments to the Constitution for his contention that his rights were violated because of the pre-arrest delay and he claims his ability to prepare a defense was hampered by such delay.

It is beyond question that an individual's Sixth Amendment right to a speedy trial does not attach until after the individual has been arrested or until formal charges have been brought against him. *United States v. Marion, supra,* 404 U. S. at 313; *Smith v. State,* 11 Md. App. 631, 634 (1971); *Osborne v. State,* 3 Md. App. 161, 238 A. 2d 145 (1968). As the Court of Appeals stated in *Miller v. State,* 239 Md. 136, 139, 210 A. 2d 394, 395 (1965), "the right to a speedy trial does not arise until a prosecution has been instituted and an accused cannot successfully complain of delay in the institution of the prosecution if it is within the applicable period of limitations."

As the Supreme Court has recognized, absent a showing of actual prejudice, compared to possible prejudice, "the applicable statute of limitations . . . is usually considered the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell,* 383 U. S. 116, 122 (1966); *see United States v. Marion, supra,* 404 U. S. at 322. Where a defendant can demonstrate actual prejudice, however, in circumstances where the delay between the occurrence of the criminal offense and the date of arrest or indictment is unduly long and the actions of the State in delaying were unreasonable, deliberate and oppressive, the due process clause would demand a dismissal of the indictment. *United*

*States v. Marion, supra; Smith v. State, supra. See Daniels v. State,* 30 Md. App. 432, 441-42, 352 A. 2d 859, 865-66 (1976).

In the instant case, appellant introduced no evidence of actual prejudice to his case caused by the pre-arrest delay. The State justified the 6-month delay in the issuance of the arrest warrant by the need to maintain Detective Strickland's undercover status. In addition, the month delay between issuance and execution of the warrant was grounded on considerations of administrative economy. We find no violation of the due process clause.

*Judgments affirmed; costs to be paid by appellant.*