STATE OF MARYLAND *v.* JAMES
TONY TEMONEY

[No. 995, September Term, 1979.]

*Decided May 12, 1980.*

The cause was argued before MORTON, MELVIN and WEANT, JJ.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Terrence J. McGann, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

Submitted on brief by *Alan H. Murrell, Public Defender,* and *Thomas J. Saunders, Assistant Public Defender,* for appellee.

WEANT, J., delivered the opinion of the Court.

On 14 June 1979, a jury in the Circuit Court for Prince George's County found the appellee, James Tony Temoney, guilty of first degree rape, first degree sexual offense, robbery with a deadly weapon, and carrying a dangerous weapon openly with intent to injure. At the sentencing disposition on 30 July 1979, the appellee was committed to the jurisdiction of the Division of Correction for the balance of his natural life for the first degree rape and the first degree sexual offense, these life sentences to run consecutively; as to the robbery with a deadly weapon charge, Mr. Temoney received a twenty year sentence to run consecutively to the two life sentences; and finally, he was given a three year sentence for the weapon offense, which was to be served concurrently with the twenty year sentence for armed robbery. Thereafter, both the appellee and the State noted timely appeals to this Court.

In his appeal Mr. Temoney argues as follows:

I. The trial court erred in refusing to grant a continuance.

II. The trial court erred in denying [his] motion to dismiss for denial of a speedy trial and due process.

III. The court erred in allowing into evidence statements induced by hypnosis.

IV. The trial court erred in its instructions on hypnosis evidence.

V. The evidence was insufficient to convict [him] of the crimes charged.

VI. The photographic array used to identify [him] was prejudicial and suggestive.

VII. Trial counsel's representation was ineffective and a denial of his sixth amendment rights.

The State not only rejects each of the above arguments as being unmeritorious, but further contends in its own appeal that "[t]he trial court improperly refused to sentence

Temoney under the mandatory provisions of Maryland Code, Article 27, Section 643B (c)."

For purposes of clarity we will outline the facts pertinent to each argument as we address it. Moreover, we will speak to the appellee's contentions first, since that response will dictate whether we need discuss the merits of the State's argument.

— Mr. Temoney's appeal —

I.

The appellee asserts three grounds for his claim that the trial court erred in refusing to grant his requested continuance, and that therefore a reversal of his convictions is required. First, he opines that it was error for the trial judge not to refer the matter of a continuance over to the administrative judge as required by Maryland Rule 746.[1] *But see Guarnera v. State,* 20 Md. App. 562, 573 n. 1, 318 A.2d 243, 248 n. 1, *cert. denied,* 272 Md. 742 (1974). Because Mr. Temoney did not raise this particular objection at trial, he has failed to preserve it for appeal. Maryland Rule 1085.

Second, while conceding that according to Maryland Rule 746 "a continuance may only be granted upon a showing of extraordinary cause," the appellee argues that he did in fact show extraordinary cause in that his counsel, in placing his reasons for the continuance on the record,[2] stated that he was "just not properly prepared for this trial." In responding to this argument, we find *Walter v. State,* 4 Md. App. 373, 243 A.2d 626 (1968) to be helpful; there we stated at pages 376-77, 243 A.2d at 627-28:

It is elementary that a continuance is within the sound discretion of the trial court, *Bright v. State,*

---

**1.** Maryland Rule 746 provides in pertinent part: "Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or judge designated by him may grant a change of trial date."

**2.** The reasons given in open court were in addition to those stated in a written motion. The court had already considered those set out in the motion and had denied the requested continuance.

1 Md. App. 657, 232 A.2d 544. The appellants urge however the right to counsel is so fundamental that the action of the court deprived them of counsel. In *Ungar v. Sarafite,* 376 U.S. 575, 84 S. Ct. 841, 11 L. Ed. 2d 921, the Supreme Court of the United States considered the problem involving the denial of a continuance which allegedly deprived the accused of his right to engage counsel and at 376 U.S. 589, 84 S. Ct. 849 the Court said:

> "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama,* 308 U.S. 444, 84 L. Ed. 377, 60 S. Ct. 321. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag,* 348 U.S. 3, 99 L. Ed. 4, 75 S. Ct. 1. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States,* 352 U.S. 385, 1 L. Ed. 2d 415, 77 S. Ct. 431; *Torres v. United States,* 270 F.2d 252 (C.A. 9th Cir.); cf. *United States v. Arlen,* 252 F.2d 491 (C.A. 2d Cir.)."

The circumstances in the case *sub judice* do not convince us that the trial court's "denial of a continuance [was] so arbitrary as to violate due process." Had Mr. Temoney chosen to dismiss his counsel for the alleged improper preparedness and then sought a continuance to seek new

counsel, the trial court would not necessarily have been required to grant the requested delay. *Guarnera,* 20 Md. App. 562, 318 A.2d 243. Thus, we are disinclined to hold that the appellee showed extraordinary cause, and that therefore the trial court clearly abused its discretion in failing to grant the requested continuance.

Finally, because of the State's alleged failure to provide discovery, the appellee argues that the only remedy available was the granting of a continuance. A review of the record indicates that, like this Court, the trial court was not persuaded that Mr. Temoney was prejudiced by having to go to trial as scheduled. *See Powell v. State,* 23 Md. App. 666, 329 A.2d 413 (1974). Again, the trial court's discretion was not clearly abused when the requested continuance was denied.

II.

The record before us shows that the victim first identified Mr. Temoney as her assailant on 28 July 1978; however, Mr. Temoney was not indicted until 10 January 1979, approximately five and one half months later. Moreover, the appellee was not brought to trial until 12 June 1979, *i.e.,* one hundred and fifty-three days from the date of indictment. Believing that both of these intervals constituted improper delays,[3] the appellee filed a motion to dismiss. While the trial court's disposition of this motion is not as pellucid as we might desire, it appears that the court did in fact consider both of the asserted grounds for dismissal when it denied such. Therefore, both grounds have been preserved for appellate review; they are however devoid of merit.

As to pre-indictment delay, this Court had occasion to address this very issue in *Dorsey v. State,* 34 Md. App. 525, 368 A.2d 1036, *cert. denied,* 280 Md. 730 (1977). There we stated at pages 537-38, 368 A.2d at 1044:

Where a defendant can demonstrate actual

---

**3.** The pre-indictment delay being a denial of his right to due process of the law and a speedy disposition of the charges against him. The pretrial delay being a denial of his right to a speedy trial.

prejudice ... in circumstances where the delay between the occurrence of the criminal offense and the date of arrest or indictment is unduly long and the actions of the State in delaying were unreasonable, deliberate and oppressive, the due process clause would demand a dismissal of the indictment. [Citations omitted].

Accordingly, we do not believe that the circumstances in the instant case "demand a dismissal of the indictment." While it may be true that Mr. Temoney was unable to prepare his defense, he admits that this is due in part to his incarceration for another offense. Furthermore, there is no evidence that the State deliberately postponed bringing the indictment in question until it was assured that Mr. Temoney's preparation of his defense would be hampered. In fact, the record indicates that although the victim identified the appellee as her attacker on 28 July 1978, it was not until late November that the police were able to link the appellee with the apartment complex where the rape occurred. Finally, the subsequent month and a half delay cannot be characterized as "unduly long," "unreasonable, deliberate and oppressive." A dismissal of the indictment for this particular delay is therefore not warranted.

Nor do we find the pretrial delay cause for dismissal of the indictment. The one hundred and fifty-three day interval exceeded the permissible delay period by a mere thirty-three days. *See Wilson v. State,* 44 Md. App. 1, 408 A.2d 102, 106 (1979). Moreover, when this thirty-three day period is analyzed in terms of *Barker v. Wingo's,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), four factor balancing test — the four factors being 1) length of delay, 2) reasons for delay, 3) assertion of the speedy trial right, and 4) prejudice to the defendant, *id.* at 530, 92 S. Ct. at 2192, 33 L. Ed. 2d at 114, we are unpersuaded that dismissal is mandated.

The appellee's trial was originally scheduled for 23 April 1979. Had it been held on this date, the speedy trial issue would fall by the wayside. However, on 18 April 1979 the State was granted a continuance, over the appellee's

objection, in order that it might process, fingerprint, photograph, and obtain hair samples from the appellee. While the appellee objected to the continuance granted on April 18 no ground was stated; in fact, he waited until two days prior to the second trial date to assert his speedy trial right. Moreover, on the day of trial he sought a continuance on the ground that he was unprepared. When these facts are balanced, we are unable to say that Mr. Temoney's indictment should have been dismissed.

## III.

The prosecuting witness testified at trial that at the time she was attacked, on 16 May 1978, she observed her assailant for approximately five to eight minutes. It was not until sometime in mid-July, however, that she remembered that the man who raped her had "a white spot on the end of his penis." This distinguishing trait was not brought to the attention of the police immediately because the prosecutrix was embarrassed. Then, on 28 July 1978, while she was undergoing hypnosis at the request of the police, the prosecuting witness told Dr. Chemol [4] and Corporal Frank Gale [5] about the white mark she had observed; neither knew about this mark beforehand.

On the same day that she relayed this new information to the police, the prosecuting witness also identified her assailant by way of photographic array. None of the pictures in the array displayed full anatomy or the genital area. A month later, the prosecutrix again identified her attacker by picking his picture out of an array.

At trial, and again here, the appellee objected to the court's permitting the statements induced by hypnosis to be introduced as evidence. The trial judge did not err, however, in admitting this testimony. As we stated in *Harding v.*

---

4. Dr. Chemol is a member of the American Society of Clinical Hypnosis, as well as related organizations. Furthermore, at the time of trial Dr. Chemol was Chief of Psychology at the Community Mental Health Center, Fort Rucker, Alabama.

5. Corporal Gale is a member of the Prince George's County Police Department, Sex Squad.

*State,* 5 Md. App. 230, 236, 246 A.2d 302, 306 (1968), *cert. denied,* 252 Md. 731, *cert. denied,* 395 U.S. 949, 89 S. Ct. 2030, 23 L. Ed. 2d 468 (1969):

> The fact that she ... achieved her present knowledge after being hypnotized concerns the question of the weight of the evidence which the trier of facts, in this case the jury, must decide. [Citations omitted].

In passing, we note that Mr. Temoney's reliance upon *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978) is somewhat misplaced. *Reed* stands for the proposition that

> before a scientific opinion will be received as evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field. Thus, according to the *Frye* [*v. United States,* 293 F. 1013 (D.C. Cir. 1923)] standard, if a new scientific technique's validity is in controversy in the relevant scientific community, or if it is generally regarded as an experimental technique, then expert testimony based upon its validity cannot be admitted into evidence.

*Id. Reed,* 283 Md. at 381, 391 A.2d at 368. Accordingly, Mr. Temoney argues that "[h]ypnosis has not been established as an approved scientific method and the introduction into evidence of testimony concerning hypnosis and hypnotically induced testimony was in error." We do not believe that *Reed* can be read as broadly as the appellee suggests. Assuming that the scientific validity of the hypnosis technique is in controversy,[6] while such would preclude the admission of expert opinion *deduced* from that technique, *id.* (citing *Frye,* 293 F. at 1014), it would not also preclude, as Mr. Temoney argues, the admission of a description of the procedure used to hypnotize the victim or the hypnotically *induced*

---

6. Dr. Chemol's testimony indicated that there is such a controversy.

578

testimony itself.[7] Thus, the appellee's argument that *Reed* vitiates the viability of *Harding* fails.

## IV.

In light of our response to argument III, we are disinclined to say that the trial judge's instruction as to how the jury should view the evidence induced by hypnosis was error.

## V.

The question whether or not the evidence adduced at trial was sufficient to convict Mr. Temoney of the crimes charged is answered by viewing said evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 2789-90 (1979); *Rusk v. State,* 43 Md. App. 476, 477, 406 A.2d 624, 625 (1979), *cert. granted,* January 25, 1980. The record clearly establishes that some person did in fact force the prosecutrix, at knife point, to engage in oral sex as well as vaginal intercourse against her will. This person then took the prosecutrix's stereo, a wristwatch, and about $30.00 in cash. This however does not necessarily establish the appellee's criminal agency. It is the evidence as to this matter that Mr. Temoney claims is insufficient. He argues that because identification of him as the prosecutrix's assailant occurred only after she had been hypnotized, no evidence was produced to satisfy the test outlined in *Jackson* and *Rusk.*

Because of our disposition of argument II we disagree with his contention that the identification by the prosecuting witness was so inherently unreliable as to militate against the application of the principle, the validity of which he concedes, that "the credibility of witnesses is a

---

7. While *Reed* suggests that the appellee may arguably have reason to object to specific portions of Dr. Chemol's testimony, *i.e.,* those portions which can arguably be said to constitute expert opinion based upon the validity of hypnosis as a scientific technique, Mr. Temoney has neither set out this particular objection nor cited testimony to support such. We in turn will not seek to do this for him.

determination for the trier of facts which will not be disturbed upon appellate review." (Citation omitted). The evidence therefore was clearly sufficient to sustain the appellee's conviction. *See Metallo v. State,* 10 Md. App. 76, 267 A.2d 804, *cert. denied,* 259 Md. 734 (1970).

## VI.

In *Smith and Samuels v. State,* 6 Md. App. 59, 78, 250 A.2d 285, 297, *cert. denied,* 254 Md. 720 and 255 Md. 743 (1969), *cert. denied,* 397 U.S. 1057, 90 S. Ct. 1402, 25 L. Ed. 2d 674 (1970) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253 (1968)), we stated:

> [E]ach case involving photographic identification procedure must be considered on its own facts, and "that convictions based on eye-witness identification at trial following a pre-trial identification by photograph will be set aside on that ground *only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."* [Emphasis added].

Applying this standard to the case *sub judice,* we are unconvinced that the pretrial identification by photographic array was such that it would result in "a very substantial likelihood of irreparable misidentification."

Our review of the record indicates that two days after she was raped, *i.e.,* 18 May 1978, the prosecutrix looked at hundreds of photographs but was unable to identify the man who had attacked her. Thereafter, following the hypnotic session on July 28, the prosecutrix was shown approximately ten pictures of black males, all about the same age. From this array, the prosecuting witness selected a photograph which she identified as being that of the man who had raped her; it was a photograph of Mr. Temoney. One month later, the prosecutrix again selected Mr. Temoney's photograph from a group of at least five pictures; once more

she identified him as her assailant. There is no evidence whatsoever that the pictures themselves were suggestive, or that the procedure used was suggestive. Moreover, that the identification occurred after the prosecutrix was hypnotized does not necessitate its being suppressed, if indeed that is the remedy the appellant is seeking, since we have already ruled that the use of hypnosis is not grounds for holding evidence inadmissible.

## VII.

As we noted in our discussion in section I, at the commencement of trial appellee's counsel requested a continuance because he felt that he was not properly prepared to proceed. Counsel's statements concerning the requested continuance did not necessarily preserve for appeal Mr. Temoney's objection that he was denied effective counsel; nor do they amount to evidence of incompetency. In any event, because Mr. Temoney has adequate post conviction remedies at his disposal, we decline to discuss this matter further.

### — State's appeal —

Having thus resolved the appellee Temoney's allegations, we turn now to the complaint of the State. It raises the question of whether the trial court improperly refused to sentence Mr. Temoney under the mandatory provisions of Maryland Code, article 27, section 643B. The appellant State of Maryland argues that it did.

Article 27, section 643B entitled "Mandatory sentences for crimes of violence" reads as follows:

(a) *"Crime of violence"*. — As used in this section, the term "crime of violence" means abduction; arson; kidnapping; manslaughter, except involuntary manslaughter; mayhem; murder; rape; robbery; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the

commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; and assault with intent to rape.

The term "correctional institution" includes Patuxent Institution and a local or regional jail or detention center.

(b) *Mandatory life sentence.* — Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory.

(c) *Third conviction of crime of violence.* — Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11.

(d) *Compliance with Maryland Rules.* — If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

On 23 March 1979, the Assistant State's Attorney filed in this case two notices of mandatory sentence, the one informing Mr. Temoney that the State would seek a

mandatory life sentence without the possibility of parole pursuant to article 27, section 643B (b) and the other notifying Mr. Temoney that the State would seek a mandatory maximum sentence without the possibility of suspension or parole pursuant to article 27, section 643B (c). This action was taken in compliance with Maryland Rule 734c, which provides as follows:

> If a mandatory sentence is prescribed by law because of a specified previous conviction, the State's Attorney, at least 15 days prior to sentencing, shall serve upon the defendant or his counsel a notice of the alleged prior conviction which would require imposition of the mandatory sentence.

At the sentencing, which took place on Tuesday, 30 July 1979, the State's Attorney called these motions to the court's attention by stating in part that "I have filed papers under Article 27, Section 643B, (b) and (c). I believe that the defendant fits the criteria under both of these sections. I think most definitely he fits the criteria of 643B (c)." However, as the sentencing hearing proceeded, the State seems to have abandoned its request for sentencing under 643B (b) by stating: "I think quite possibly under 643B (b) the straight mandatory life for the fourth-time offense, I think that probably fails because the defendant didn't serve a period of incarceration the very first time he committed robbery. He got probation." The State then proceeded to say: "But I think you are on solid footing when you sentence under 643B (c)."

Following the imposition of the sentence by the court, the following colloquy took place between the court and the Assistant State's Attorney:

MR. McGANN: For the record, so the record is clear, Your Honor is also sentencing under the provisions of Section 643B (c)?

THE COURT:        No.

MR. McGANN:       So the record is clear does
                  Your Honor feel that it
                  doesn't apply in this
                  particular case?

THE COURT:        Without holding whether it
                  applies or not, the Court feels
                  that the sentence it has just
                  imposed, regardless of the
                  section you have just referred
                  to, Article 27, Section 643B
                  (c), that the matters of parole
                  are left with the Department
                  of Parole and Probation.

MR. McGANN:       So it is perfectly clear, Your
                  Honor is refusing to sentence
                  under that provision in
                  addition to your other
                  sentence?

THE COURT:        That is correct.

The State maintains that consideration of section 643B (c) is mandatory and we agree. The title given to section 643B of article 27 of the Annotated Code of Maryland reads: "Mandatory sentences for crimes of violence." Black's Law Dictionary 867 (5th ed. 1979) defines "mandatory" as follows: "Containing a command; preceptive; imperative; peremptory; obligatory."

Carrying out the tenor of the title, subsection (c) covering the third conviction of a crime of violence provides, among other things, that a defendant meeting the criteria set forth therein "*shall* be sentenced" under the provisions of that section and further that "the person *shall* not be eligible for parole except in accordance with the provisions of [Maryland

Code,] Article 31B, § 11." [8] (Emphasis added). It is obvious from this language that the Legislature intended a compelling and not a discretionary use of section 643B. In the case of *Johnson v. State,* 282 Md. 314, 384 A.2d 709 (1978), the Court of Appeals said at page 321, 384 A.2d at 713:

> We have stated on numerous occasions that in the absence of a contrary contextual indication, the use of the word "shall" is presumed to have a mandatory meaning, *Moss v. Director,* 279 Md. 561, 564-65, 369 A.2d 1011 (1977), and thus denotes an imperative obligation inconsistent with the exercise of discretion. *Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169, 338 A.2d 248 (1975).

We find no contextual indication in the statute in question that "shall" has any meaning other than a mandatory one.

In the case at hand, the court not only refused to consider the statute, *i.e.,* by saying "without holding whether it applies or not," it went on to nullify the obvious intent of the legislation, which is to prohibit parole. The trial court said in this regard "that the matters of parole are left with the Department of Parole and Probation." It is clear that it is just this eventuality that the Legislature was attempting to obviate.

It is argued by Mr. Temoney that the trial judge was correct in refusing to sentence under the provisions of article 27, section 643B because "the State failed to prove the necessary facts required to show that Appellee met the statutory criteria for mandatory sentences." However, as mentioned, the trial court admittedly did not consider whether this section applied or not. Therefore, since we opine that the consideration of section 643B (c) is mandatory, and since this Court is limited to appellate review and is not empowered to make original factual findings, *Hartley v. State,* 238 Md. 165, 208 A.2d 72 (1965),

---

8. Article 31B pertains to Patuxent Institution and is not relevant to this matter at this time.

we shall remand the case to the trial court pursuant to Maryland Rule 1071 for the trial court's reconsideration of the facts under the provisions of article 27, section 643B (c).

> *Conviction affirmed.*
> *Sentence     vacated     and     case*
> *    remanded for resentencing.*
> *Costs to be paid by appellee.*