STATE OF MARYLAND *v.* HARRY LOVEDAY,
THE YOUNGER

[No. 1119, September Term, 1980.]

*Decided April 14, 1981.*

The cause was submitted on briefs to GILBERT, C. J., and THOMPSON and MOYLAN, JJ.

Submitted by *Stephen H. Sachs, Attorney General, Michael A. Anselmi, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Glenn L. Klavans, Assistant State's Attorney for Baltimore City,* for appellant.

Submitted by *Alan H. Murrell, Public Defender,* and *Claudia A. Cortese, Assistant Public Defender,* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The State of Maryland waged a battle in the Criminal Court of Baltimore to have Harry Loveday sentenced as a "three time offender." The State has appealed from the trial judge's refusal to invoke Md. Ann. Code art. 27, § 643B (c). Had the judge followed section 643B (c), Loveday would have been sentenced to 25 years instead of 10 years. The State asks that we vacate the sentence imposed by the criminal court and remand the matter for the imposition of a proper sentence.

Implicitly conceding that although he won the battle, he might lose the war, Loveday suggests that there be a factual finding by the trial judge as to whether the prosecutor trampled upon Loveday's right to due process of law. In sum, Loveday thinks he is in the "catbird seat"[1] and seeks to return to the arena to fight again, obviously in the expectation that he will carry the day.

This case has arisen because of an agreement to disagree on a plea bargain. From the record, we glean that Loveday's trial attorney had entered into negotiations with the prosecutor about a plea of guilty to one of the charges facing Loveday. It was agreed between the attorneys that if

---

1. An expression used by a former New York Yankee baseball announcer. It means having the upper hand or things to your advantage.

Loveday would plead guilty to robbery, the State would stand silent as to any recommendation relative to the sentence.

When informed by his attorney that he, Loveday, would be sentenced to about 10 years, Loveday rejected the opportunity to plead guilty and opted for a jury trial. In the light of his counsel's advice, Loveday may have reasoned that he had nothing to gain by pleading guilty.[2]

Following the jury's verdict of guilty, but before the imposition of sentence, the State filed a motion for mandatory sentence pursuant to Md. Rule 734[3] and Md. Ann. Code art. 27, § 643B (c) and (d). Those sections provide:

─────────

**2.** Md. Ann. Code art. 27, § 486 prescribes that a penalty for the crime of robbery be "not less than three nor more than ten years."

**3.** Md. Rule 734 provides:

"a. *Definition.*

A subsequent offender means a defendant who, because of prior conviction, is subject to additional or mandatory statutory punishment for the offense charged.

b. *Required Notice of Additional Penalties.*

Except as provided in section c of this Rule, no defendant shall be sentenced as a subsequent offender unless prior to acceptance of a plea of guilty or *nolo contendere* or at least 15 days prior to trial, whichever is earlier, the State's Attorney serves a notice on the defendant or his counsel that the State will seek increased punishment as authorized by law. The notice shall set forth each prior conviction to be relied upon.

c. *Mandatory Penalties.*

If a mandatory sentence is prescribed by law because of a specified previous conviction, the State's Attorney, at least 15 days prior to sentencing, shall serve upon the defendant or his counsel a notice of the alleged prior conviction which would require imposition of the mandatory sentence.

d. *Disclosure of the Notice.*

After acceptance of a plea of guilty or *nolo contendere* or after conviction a copy of the notice shall be filed with the clerk and presented to the court. The allegation that the defendant is a subsequent offender is not an issue in the trial upon a charging document and may not be disclosed to the trier of fact without the consent of the defendant, except as permitted in this Rule. Nothing herein shall prohibit the use of any prior conviction for impeachment purposes, if the evidence is otherwise admissible.

e. *Determination.*

Before sentencing and after giving the defendant an opportunity to be heard, the court shall determine whether the defendant is a subsequent offender as specified in the notice of the State's Attorney."

"Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11.

(d) ... If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender."

The State sought to have the trial court impose a 25-year sentence on Loveday because of Loveday's prior term for a crime of violence.[4]

The trial judge refused to impose sentence under section 643B (c), and he opined that the statute "was not mandatory ... under the circumstances. . . ." The judge was obviously disturbed by what he considered to be "almost a set-up," saying that the State offered Loveday "one sentence" and after it was rejected, the State then sought to use the mandatory penalty statute. "Fundamental fairness," the judge said, precluded the imposition in this case of the mandatory sentence.

---

4. Section 643B (a) defines a "crime of violence." The section provides:

"As used in this section, the term 'crime of violence' means abduction; arson; kidnapping; manslaughter, except involuntary manslaughter; mayhem; murder; rape; robbery; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; and assault with intent to rape.

The term 'correctional institution' includes Patuxent Institution and a local or regional jail or detention center."

This Court has had the occasion to pass upon the question of whether section 643B is mandatory or directory. In *State v. Temoney,* 45 Md. App. 569, 414 A.2d 240 (1980), Judge Weant, speaking for the Court, said that section 643B (c) is mandatory and the trial judge must consider it when imposing sentence. *Id.* at 584, 414 A.2d at 247. Ergo, the trial judge in the matter now before us was in error in concluding that section 643B (c) was directory. *See also Calhoun v. State,* 46 Md. App. 478, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981). We shall remand the case pursuant to Md. Rule 1071 for the trial court's reconsideration.

Our discussion does not end, however, with our decision to remand. We must address the question of whether the State's failure to disclose, during the time of the plea bargaining, that it was considering the employment of section 643B (c) if the plea negotiating failed, and Loveday opted for trial on the merits, was a denial of Fourteenth Amendment due process.

A prosecutor is not ordinarily obligated to recommend leniency or stand silent at the time of sentencing unless by a plea bargain he has bound himself to that course of conduct. *See e.g., Santobello v. New York,* 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); *Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974); *Sturgis v. State,* 25 Md. App. 628, 336 A.2d 803 (1975); *Wynn v. State,* 22 Md. App. 165, 322 A.2d 564 (1974). It has been held that the prosecutor is not required to give advance notice to an accused that "trial on the substantive offense will be followed by an habitual criminal proceeding." *Oyler v. Boyles,* 368 U.S. 448, 452, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). *See Graham v. West Virginia,* 224 U.S. 616, 626, 32 S. Ct. 583, 56 L. Ed. 917 (1912).

Md. Rule 734 b provides that when a guilty or *nolo contendere* plea is made, the increased penalty may not be employed unless the State, 15 days prior to its implementation of the habitual offender status, has supplied notice of its intent to utilize section 643B. The rule does not, however, mandate that such a notice must be given prior to

trial when the defendant's plea is "not guilty," but, if following conviction, the State intends to rely upon the habitual offender statute, it must furnish the accused notice of that intent "at least 15 days prior to sentencing."

Loveday argues that in the instant case he should have been advised by the State when the plea bargain was being discussed that the State intended to invoke section 643B (c) should the bargain not be struck. Implicit in that argument is that had the State revealed its intent, Loveday would not have elected to stand trial on his plea of not guilty. Having made that assertion, Loveday then proceeds to suggest that "the prosecutor's prompt invocation of the mandatory sentencing procedure raises the serious possibility that the State in fact knew of . . . [Loveday's] alleged prior convictions before trial and during plea bargaining." By so suggesting, Loveday seeks to taint the State in such a way as to demonstrate bad faith in the negotiations and, thus, a denial to Loveday of due process.

The prosecutor's prompt invocation, following conviction of Loveday by the jury, of the provisions of section 643B (c) and Md. Rule 734 does not give rise to an inference that the prosecutor knew of Loveday's prior record. Nevertheless, even if he did know of Loveday's "priors" he was not required to disclose his intent to invoke section 643B (c). Furthermore, it is unlikely that any one knew more about Loveday's prior criminal record than Loveday himself.

In order for the trial court to impose a sentence under section 643B, there must be a hearing to determine whether the accused and the person who had been previously convicted of a crime of violence are one and the same. Md. Rule 734 e. Additionally, but of equal importance, the judge must find that the previous conviction was not unconstitutionally obtained. *United States v. Tucker,* 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Burgett v. Texas,* 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967); *Carroll v. State,* 19 Md. App. 179, 310 A.2d 161 (1973); *Towers v. Director,* 16 Md. App. 678, 299 A.2d 461 (1973). If the prior conviction is constitutionally invalid, it may not be

used as a basis for enhanced punishment. *Burgett v. Texas, supra.*

Unquestionably, Maryland has the right to enact and enforce a recidivist statute, *Rummell v. Estell,* 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), and to decide the type of offense that falls within the ambit of such a statute. *Id.* This is true, as *Rummell* notes, because the State "has a valid interest in so dealing with . . . [habitual offenders]." *Id.* at 276.

The United States District Court, in *Wessling v. Bennett,* 290 F. Supp. 511, 518 (D.C.N.D. Iowa 1968), *cert. denied,* 396 U.S. 945 (1969), flatly held, in a fact pattern similar to that in the matter before us, that:

> "[Wessling] was entitled to a fair trial on his guilt or innocence of the crime charged. He was obviously not entitled to an offer by the County Attorney of a lesser plea and could have secured no vested interest in such an offer when made. The offer could have been withdrawn at any time even if . . . [Wessling] had accepted it and he would have no standing to complain. Therefore, that a lack of knowledge of the habitual claim affected his judgment on whether to accept a lesser charge can give . . . [Wessling] no solace as he was only entitled to have a trial comporting to basic standards of fairness — not favoritism."

*See also United States ex rel. Williams v. McMann,* 436 F.2d 103 (2d Cir.), *cert. denied,* 402 U.S. 914 (1970).

Loveday cites us to *People v. Fountain,* 407 Mich. 96, 282 N.W.2d 168 (1979). There, the Supreme Court of Michigan reversed a conviction grounded on the habitual offender article because the prosecutor knew of the prior offense before trial but did not invoke the habitual offender article until after trial but before sentencing. The Michigan Court, in a *per curiam* opinion, said that under their supervisory powers the failure of the prosecutor to notify the defendant of his intent to rely upon the habitual offender article amounted to the "appearance of prosecutorial impropriety."

*Id.* at 99, 282 N.W.2d at 170. We reject that holding. Not only is it out of line with *Oyler v. Boyles, supra,* but we are not persuaded by its reasoning.

A defendant has the right "not to plead guilty," *United States v. Jackson,* 390 U.S. 570, 581, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968), and the imposition of punishment in retaliation for the exercise of that right is unconstitutional. *North Carolina v. Pearce,* 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). While *Pearce* involved the question of vindictiveness of the trial judge, the rule has been extended to cover the actions of prosecutors, *Blackledge v. Perry,* 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), but we do not perceive any prosecutorial impropriety in the instant case. *Bordenkircher, Penitentiary Superintendent v. Hayes,* 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).

Loveday also argues that equity and fair play should govern plea negotiations. We agree, but "equity and fair play" does not mean that the State is required to muster every weapon it has and parade them before an accused. We do not observe any indicia in the instant case of a denial of "equity or fair play" in the plea negotiations, nor do we perceive an absence of "fundamental fairness."

> *Sentence vacated.*
>
> *Case remanded for further proceedings consistent herewith.*
>
> *Costs to be paid by appellee.*